UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-5

WILLIAM H. WALDSACHS                                                    PLAINTIFF

v.

INLAND MARINE SERVICE, INC. and
C/C TRANSPORT, INC.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant C/C Transport, Inc.'s Motion for

Summary Judgment (Docket #23).  Plaintiff has responded (Docket #26).  Defendant has replied

(Docket #28).  This matter is now ripe for adjudication.  For the following reasons, Defendant's

motion is DENIED.

## BACKGROUND

Plaintiff William H. Waldsachs was an employee of Defendant Inland Marine Service

Inc. ("Inland Marine"), a shipping company operating barges on the Ohio and Mississippi

Rivers.  On March 23, 2009, after a thirty-day term of service on one of Inland Marine's barges,

Waldsachs disembarked in Owensboro, Kentucky, several hundred miles upriver from his home

in Paducah, Kentucky.  From there, Waldsachs boarded a van, owned by Defendant C/C

Transport, Inc. ("C/C") and operated by George Bobo, which was to drive him to Paducah.  The

trip over land was to take roughly two hours and fifteen minutes.  Waldsachs and Bobo were the

only people in the van.

Bobo took the most direct route from Owensboro to Paducah, along the Western

Kentucky Parkway ("Parkway").  The Parkway is a four-lane, limited access highway.  At some

point into the drive, Waldsachs requested that Bobo pull over so that he could urinate.[1]

Somewhere around Princeton, Kentucky, and exit thirteen (13) on the Parkway, Bobo acceded to

Waldsachs's requests and stopped the van.[2]  Waldsachs exited the van, stepped over a guard rail

running along the shoulder and proceeded to walk into an open field that abutted the Parkway.

He claims that his destination was a tree line that stood roughly eighty yards from the Parkway,

where he would be afforded some privacy to relieve himself.  While crossing the field,

Waldsachs alleges the he stepped into a hole that had been obstructed by debris and fractured his

left tibia and fibula.[3]  Unable to stand, Waldsachs crawled back to the van and Bobo drove him

for treatment at a nearby hospital.  The injury later required surgery at the Vanderbilt University

Medical Center.

On January 6, 2010, Waldsachs filed this action under the Jones Act, 46 U.S.C. § 30104

*et seq.*, against Inland Marine and common law negligence against C/C.  In his Complaint, he

said that Inland Marine and its agent, C/C, were negligent in transporting him from Owensboro

to Paducah.  In particular, he states that Bobo's failure to stop the van in a safe location and

allow him to urinate violates the ordinary standard of care for a common carrier.  This matter is

currently set for trial on November 7, 2011.  C/C has now moved for summary judgment on two

---

[1] There is a discrepancy between Waldsachs's and Bobo's deposition testimony about how many times Waldsachs requested to use the bathroom.  Waldsachs says that he asked several times while Bobo claims that he only asked once.

[2] Again, there are discrepancies about exactly where the van stopped.  Waldsachs says that the van stopped along the shoulder of the Parkway.  Bobo maintains that he pulled over on exit 13's ramp, just off of the Parkway.

[3] Waldsachs had suffered a previous injury to his left leg that had previously necessitated inserting a stabilizing rod.  The injury he suffered on March 23, 2009, bent that rod, which in turn fractured his leg.

2

different bases: (1) it did not owe Waldsachs a duty once he exited the vehicle and his injury was unforeseeable and (2) its actions were not a substantial factor in bringing about the harm which led to Waldsachs's injury.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

"In any negligence action under Kentucky law, a plaintiff must prove the existence of a

duty, breach thereof, causation, and damages." *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009) (citations omitted). The Court must determine as a matter of law whether Defendant owed a duty to Plaintiff. *See id.* Whether Defendant breached that duty and whether Plaintiff suffered an injury are questions of fact for the jury. *Id.* "Causation presents a mixed question of law and fact." *Id.* (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)). Defendant asserts that Plaintiff cannot establish duty or causation.

## I.      Duty

First, Defendant argues that its duty as a common carrier ceased once Plaintiff exited the vehicle. "[A] common carrier owes its passengers a higher degree of care than does the operator of a private vehicle." *Indianapolis & Southeastern Trailways, Inc. v. Blankenship*, 444 S.W.2d 267, 268 (Ky. 1969) (citing *Adams v. Louisville Taxicab & Transfer Co.*, 211 S.W.2d 397, 399 (Ky. 1948)). "Although a carrier must exercise the highest degree of care for its passengers, it is not an insurer of their safety." *Fisher v. Louisville Transit Co.*, 303 S.W.2d 272, 273 (Ky. 1957). A common carrier's duty continues "until [the passenger] has safely alighted from the vehicle, or at least has been given an opportunity to alight." *Allen v. Dillman*, 249 S.W.2d 23, 25 (Ky. 1952). Moreover, it is the duty of a common carrier to "stop at reasonably safe places for passengers to alight." *Id.*

In this case, Bobo pulled off the Parkway either along the shoulder or off the ramp of exit 13. At this time, Plaintiff exited the vehicle. Defendant claims that once Plaintiff had safely alighted from the vehicle to urinate, Defendant no longer owed Plaintiff a duty. *See Trout's Adm'r v. Ohio Valley Elec. Ry. Co.*, 43 S.W.2d 507, 509-10 (Ky. 1931). Plaintiff alleges that Defendant violated its duty to stop in a safe place for him to exit the vehicle, *prior* to Plaintiff

exiting the vehicle. *See Southeastern Greyhound Lines v. Woods*, 184 S.W.2d 93, 96 (Ky. 1944). "In such a case the carrier's duty is merely not to hazard the safety of the passenger by putting him off or allowing him to get off at a place which the carrier, through its employe[e], knows or ought to know is unsafe." *Id.*

Under Kentucky law, a common carrier's duty generally ends once a passenger safely alights.  In this case, Plaintiff safely alighted from the van onto the shoulder of the Parkway.  At the same time, however, Bobo dropped Plaintiff off in a potentially unsafe environment prior to arrival at his destination, such that Plaintiff could not continue safely on his journey without re-boarding Defendant's vehicle.  Although the heightened common carrier standard of care may have ended after Plaintiff safely alighted from the vehicle, the Court believes Defendant still had a duty to exercise "'ordinary care . . . to prevent foreseeable injury.'"  *Biggs v. Eaton Sales, Inc.*, No. 2010-CA-000639-MR, 2011 WL 1901793, at *10 (Ky. Ct. App. May 20, 2011) (quoting *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)).  Thus, under the circumstances presented by this case, Defendant's duty did not end after Plaintiff's feet hit the ground.  Plaintiff was still in Defendant's care, i.e., the relationship between the parties had not ceased. *Id.* (universal duty only applies if a relationship exists).

Defendant also argues that it did not owe a duty to Plaintiff because his injury was not foreseeable.  "Duty may be established in several ways, but ultimately, '[t]he most important factor in determining whether a duty exists is foreseeability."  *Boland-Maloney*, 302 S.W.3d at 686.  The Court's foreseeability analysis differs from that applied in the context of causation.  "Whether a harm was foreseeable in the context of determining duty depends on the general foreseeability of such harm, not whether the specific mechanism of the harm could be foreseen."

5

*Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 212 (Ky. Ct. App. 2007).  The

foreseeability factor only requires that the "injury of some kind to some person could have been

foreseen." *Bolus v. Martin L. Adams & Son*, 438 S.W.2d 79, 81 (Ky. 1969).  The Court looks to

what the defendant knew at the time of the alleged negligence.  *Pathways*, 113 S.W.3d at 90.  A

defendant may be held to have foreseen the risk if a reasonable person would realize that his

conduct invaded another's interest "while exercising . . . such attention, perception of the

circumstances, memory, knowledge of other pertinent matters, intelligence, and judgment as a

reasonable man would have . . . ."  Restatement (Second) of Torts § 289(a); *Pathways*, 113

S.W.3d at 90.

> For the purpose of determining whether the actor should recognize that his
> conduct involves a risk, he is required to know (a) the qualities and habits of
> human beings and animals and the qualities, characteristics, and capacities of
> things and forces in so far as they are matters of common knowledge at the time
> and in the community; and (b) the common law, legislative enactments, and
> general customs in so far as they are likely to affect the conduct of the other or
> third persons.

Restatement (Second) of Torts § 290; *Pathways*, 113 S.W.3d at 90.

In this case, the Court finds that Defendant should have recognized that Bobo's actions

involved a risk of harm to Plaintiff.  Bobo pulled off to the side of the road (or side of a ramp) on

a four-lane highway instead of pulling into a rest stop or a gas station.  He knew that Plaintiff

had to exit the vehicle to urinate.  It was daylight and there was nothing blocking the view of

other vehicles.  It is common knowledge that human beings seek privacy while using the

bathroom.  Further, it is illegal in Kentucky for a person to "intentionally expose his genitals

under circumstances in which he knows or should know that his conduct is likely to cause affront

or alarm to a person . . . ."  Ky. Rev. Stat. Ann. §§ 510.148, 150.  In light of this required

6

knowledge, Bobo should have recognized that pulling off where he did for Plaintiff to urinate posed a foreseeable risk that Plaintiff would seek a private place to urinate and could suffer injury.

Finally, the Court finds that the foreseeable risk was unreasonable. "A risk foreseen has to be unreasonable before the defendant may be held liable for creating the risk." *Pathways*, 113 S.W.3d at 91. A risk is considered unreasonable if "'the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done.'" *Id.* (quoting Restatement (Second) of Torts § 291). In this case, there is no evidence that Bobo could not have pulled off of the Parkway to either a rest stop or gas station in order for Plaintiff to urinate. Exit 13 is the first Princeton exit and there are numerous public restrooms within one mile. Bobo's act in stopping on the side of the road served no real utility and a reasonable alternative manner of acting was clearly available. Accordingly, the foreseen risk was unreasonable and Defendant's arguments fail as a matter of law.

## II.    Causation

In order to prevail on his claim, Plaintiff must also be able to establish causation. In Kentucky, a plaintiff is required to prove that the defendant's negligent conduct was a "'substantial factor in bringing about the harm.'" *Pathways*, 113 S.W.3d at 92 (quoting Restatement (Second) of Torts § 431). "The court has the duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been as substantial factor in causing the harm to the plaintiff.'" *Id.* (quoting Restatement (Second) of Torts § 434(1)(a)). In making this determination, the Court views all of the facts in favor of the non-movant. *Id.* If the Court determines that the jury may

not reasonably differ, the Court decides the issue of causation as a matter of law.  *See* Restatement (Second) of Torts § 434(1)(c).

Defendant argues that any negligence on its part was insignificant or negligible in comparison to Plaintiff's own negligence, such that Defendant's alleged negligence was not a substantial factor in bringing about Plaintiff's injury.  Defendant asks the Court to find as a matter of law that a jury could not reasonably differ on whether Defendant's act was a substantial factor.

Assuming for purposes of this analysis that Defendant breached its duty to Plaintiff, the Court must consider the facts in a light most favorable to Plaintiff in determining whether Defendant's negligence was a substantial factor in bringing about Plaintiff's injury.  The essential facts, resolving all doubts in favor of Plaintiff, are as follows:

Bobo pulled the van over on the shoulder of the Parkway in order for Plaintiff to urinate. Because of this action, Plaintiff was required to urinate somewhere other than a public restroom in broad daylight.  There was a guardrail separating the shoulder from a field and a line of trees. Plaintiff stepped over the guardrail, which he describes as approximately a one and a half feet high, and then walked into the field.  He began walking on the flat grassy ground that had been rutted by some kind of machinery with the goal of reaching a tree line approximately eighty yards away.  Plaintiff "was trying to get out of the public, so that [he] wasn't standing on the side of the road going to the bathroom in full view of God and everybody else."  Pl. Depo., DN 23-4, p. 72. Leaves and sticks from a recent ice storm covered the ground.  Approximately thirty yards into the field, Plaintiff stepped into a hole with his left leg and fell over.  His injuries stem from this fall.

But for Bobo's decision to pull off on the side of the road, Plaintiff would not have suffered injury in that field.  This is a necessary component of causation, but is not, by itself sufficient.  *Deutsch v. Shein*, 597 S.W.2d 141, 144 (Ky. 1980) (quoting Restatement (Second) of Torts § 431, comment a).  Defendant emphasizes that Plaintiff made the voluntary decision to cross the guardrail into the field and to walk toward the line of trees, with the intention of walking at least eighty yards from the road.  At the same time, however, Defendant's alleged negligence led to Plaintiff being in that position, and it was foreseeable that Plaintiff would seek privacy.  The Court cannot say that a jury could not reasonably differ in determining whether Defendant's conduct was a substantial factor in Plaintiff's injury.  Accordingly, the Court believes the causation in fact issue is best left to the jury.  Obviously this is a close case and certainly there is a strong probability of the jury applying comparative fault.  This case lends itself to exploring settlement.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant C/C Transport, Inc's Motion for Summary Judgment is DENIED.

9