UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-00005-R

**WILLIAM H. WALDSACHS**                                                                                    **PLAINTIFF**

v.

**INLAND MARINE SERVICE, INC. and**
**C/C TRANSPORT, INC.**                                                                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Inland Marine Service, Inc.'s motion for summary judgment (DN 31). Plaintiff has responded (DN 39) and Defendant has replied (DN 42). This matter is now ripe for adjudication. For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

Plaintiff William H. Waldsachs was an employee of Defendant Inland Marine Service Inc. ("Inland Marine"), a shipping company operating barges on the Ohio and Mississippi Rivers. On March 23, 2009, after a thirty-day term of service on the M/V Clyde Butcher, one of Inland Marine's barges, Waldsachs disembarked in Owensboro, Kentucky. This was several hundred miles upriver from his home in Paducah, Kentucky. From there, Waldsachs boarded a van, owned by Defendant C/C Transport, Inc. ("C/C") and operated by George Bobo, which was to drive him to Paducah. The trip over land was to take roughly two hours and fifteen minutes. Waldsachs and Bobo were the only people in the van.

Bobo took the most direct route from Owensboro to Paducah, along the Western Kentucky Parkway ("Parkway"). The Parkway is a four-lane, limited access highway. At some

point into the drive, Waldsachs requested that Bobo pull over so that he could urinate.[1] Somewhere around Princeton, Kentucky, and exit thirteen (13) on the Parkway, Bobo acceded to Waldsachs's requests and stopped the van.[2] Waldsachs exited the van, stepped over a guard rail running along the shoulder and proceeded to walk into an open field that abutted the Parkway. He claims his destination was a tree line that stood roughly eighty yards from the Parkway, where he would be afforded some privacy to relieve himself. While crossing the field, Waldsachs stepped into a hole that had been obstructed by debris and fractured his left tibia and fibula.[3] Unable to stand, Waldsachs crawled back to the van and Bobo drove him for treatment at a nearby hospital. The injury later required surgery at the Vanderbilt University Medical Center.

On January 6, 2010, Waldsachs filed this action under the Jones Act, 46 U.S.C. § 30104 *et seq.*, against Inland Marine and common law negligence against C/C. In his complaint, he says Inland Marine and its agent, C/C, were negligent in providing him a safe working environment. In particular, he states that Bobo's failure to stop the van in a safe location and allow him to urinate violates the Jones Act's standard of negligence. This matter is currently set for trial on November 7, 2011.

---

[1] There is a discrepancy between Waldsachs's and Bobo's deposition testimony about how many times Waldsachs requested to use the bathroom. Waldsachs says that he asked several times while Bobo claims that he only asked once.

[2] Again, there are discrepancies about exactly where the van stopped. Waldsachs says that the van stopped along the shoulder of the Parkway. Bobo maintains that he pulled over on exit 13's ramp, just off of the Parkway.

[3] Waldsachs had suffered a previous injury to his left leg that had necessitated inserting a stabilizing rod. The injury he suffered on March 23, 2009, bent that rod, which in turn fractured his leg.

Inland Marine has moved for summary judgment on several different bases.[4]  It first argues C/C is not its agent or employee and therefore it cannot be held liable for Bobo's actions on the Parkway.  Inland Marine further states Waldsachs cannot establish a breach of duty under the Jones Act because there was no duty to keep him safe during the trip between Owensboro and Paducah.  During the pendency of this motion, the Court denied C/C's motion for summary judgment, finding it had a duty as a common carrier to stop at a safe location for Waldsachs to urinate and the issue of causation was one best resolved by a jury.  Memo. & Op. Ord., DN 36 at 6-9.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which

---

[4] Inland Marine originally requested summary judgement on Waldsachs's claims for general maritime maintenance and cure.  The parties have agreed these claims should be dismissed and entered an order to that effect.  DN 38.  As such, the Court does not consider them.

the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. Agency of C/C

Waldsachs asserts a negligence claim against Inland Marine under the Jones Act.  To survive this motion for summary judgment, he must show (1) he was a seaman, (2) he was injured while acting in the course of his employment, and (3) Inland Marine or its agents played "any part" in causing his injury.  *See Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir. 2001).  The parties do not contest that Waldsachs was a seaman or that he was injured during the course of his employment.  *See id.* at 447 (seaman "may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship" (quoting *Chandris, Inc. v. Latsis*, 515 U.S. 347, 360 (1995))); *Vincent v. Harvey Well Service*, 441 F.2d 146, 148 (5th Cir. 1971) (collecting cases of injuries occurring onshore that were still within the course of a seaman's employment).  Rather, the thrust of Inland Marine's motion argues that C/C and Bobo were not involved in an integral function of its operations and thus should not be considered agents.

"The Jones Act incorporates the standards of the Federal Employers' Liability Act [FELA], as amended, which renders an employer liable for the injuries negligently inflicted on

4

its employees by its 'officers, agents, or employees.'"[5] *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263 (1966) (footnotes and quotation marks omitted). The vessel owner may not be held liable for the negligence of an agent or independent contractor unless they were "performing operational activities connected with the vessel." Thomas J. Schoenbaum, 1 Admiralty and Maritime Law § 6-21 (1st ed. 1987); *see Hopson*, 383 U.S. at 264 ("[W]hen an employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA." (quoting *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 331-32 (1958))); *Vincent*, 441 F.2d at 147 (question is one of the "nature of the service and its relationship to the operation of the vessel").

The salient question is whether the transportation services provided by C/C were "operational activities" of Inland Marine. In its motion, Inland Marine focuses on the differing business models between itself and C/C, claiming that providing transportation services for its employees is not an operational activity of a barge line. Def. Br. p. 7-8, DN 31-1 at 7-8. Inland Marine also says since Bobo was under the control of C/C, he could not have been providing an integral service.

Inland Marine's arguments ignore the majority of legal decisions that have interpreted the breadth of "operational activities" under FELA. First, several courts have found that transporting seaman or railroad employees to and from a job site constitutes an operational activity. In *Hopson v. Texaco, Inc.*, the owner of a vessel procured a taxi to take two ill seamen

---

[5] Claims by railroad employees injured while on the job site are covered under FELA as well. 45 U.S.C. § 51; *see Baker v. Baltimore & Ohio R. Co.*, 502 F.2d 638, 640-41 (6th Cir. 1974).

to the hospital.  383 U.S. at 263.  Due to the driver's negligence, the taxi was involved in an accident in route, killing one of the seamen and injuring the other.  *Id*.  The Supreme Court reversed the lower court's decision and found the transport of the seamen was an operational activity of the vessel.  *Id*.  In *Penn Central Corp. v. Checker Cab Co.*, 488 F. Supp. 1225 (E.D. Mich. 1980), rail workers being taken from one rail yard to another were injured when the cab they were riding in collided with a tractor-trailer.  *Id*. at 1227.  Relying in part on *Hobson*'s interpretation of FELA, the district court concluded where a "railroad utilizes cab services to transport its employees, these services can constitute an operational activity."  *Id*. at 1228.  Such a finding has become commonplace where employers governed by FELA provide transportation for their employees.  *See e.g.*, *Robinson v. CSX Transp., Inc.*, 535 F. Supp. 2d 875, 879-80 (N.D. Ohio 2008); *Keller v. St. Louis-Southwestern Ry. Co.*, 952 F. Supp. 711, 713-14 (D. Kan. 1996); *Leek v. Baltimore & Ohio R.R.*, 200 F. Supp. 368 (N.D. W.Va. 1962).

      In addition, courts reviewing agency principals under FELA tend to focus on the contractual relationship between the vessel owner and the agent.  In *Craig v. Atl. Richfield Co.*, 19 F.3d 472 (9th Cir. 1994), a seaman was killed when an airplane he was on crashed in Indonesia.  *Id*. at 474.  The seaman was flying to meet a drilling barge, to which he was assigned, at a prearranged destination.  *Id*.  In rejecting attempts by his estate to bring a negligence action against the vessel's operator, the court of appeals noted the airline and operator did not have a contractual agreement to transport its employee and the seaman had selected the particular airline on his own.  *Id*. at 478.  Under those circumstances, the airline was not an agent of the vessel's operator.  Such a finding parrots the rulings of other courts discussing agency in the context of the Jones Act.  *See Rannals*, 265 F.3d at 447 (third party's negligence may be imputed

to vessel's owner where there was a contractual relationship between the two); *Tim v. Am. President Lines, Ltd.*, 409 F.2d 385, 388 (9th Cir. 1969) (where the vessel owner did not have a contract with stevedore company to load or unload cargo, there was no agency relationship under the Jones Act).

This contract-centric view of operational activities also follows from the line of cases that hold ship owners liable for negligent medical treatment its seamen receive while onshore. Although onshore physicians can be agents of the vessel's operator, "[l]iability does not attach . . . when a seaman selects his own physician." *Dise v. Express Marine, Inc.*, 651 F. Supp. 2d 457, 468 (D. Md. 2009) (citing *Joiner v. Diamond M Drilling Co.*, 688 F.2d 256, 262 n. 9 (5th Cir. 1982)). Only where the vessel's operator "take[s] some affirmative act in selecting or engaging the physician" is the operator held to account for the physician's negligent actions. *Id.* (citing *Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 489, 492-93 (7th Cir. 2001)). This precedent undoubtedly arises in large part because the physicians are providing their services under an express or implied contract for the vessel's owner.

Here, Inland Marine had an express contractual agreement with C/C to transport its crew to and from ports along the Ohio River. Waldsachs did not select the transportation company or pay them for the trip; instead, Inland Marine offered the service to its employees because from time to time crew members of the M/V Clyde Butcher boarded and disembarked in different locations. According to Waldsachs, transporting crew members over land between cities along the river system was "more reliable and more convenient for Inland Marine." Aff. ¶ 5, DN 39-1 at 2. The aforementioned precedent, along with the clear contract between Inland Marine and C/C, dictates the transportation of crew between ports was a operational activity as envisioned

under FELA.  Consequently, the Court concludes Inland Marine can be held vicariously liable for C/C's negligence under the above-stated principles of agency.

### II. Imputation of negligent behavior

Inland Marine next offers several reasons why a claim of negligence is improper under the Jones Act.  It says it did not owe Waldsachs's a duty to ensure his safety on the trip from Owensboro to Paducah, and even if it did, his decision to walk across the field to relieve himself was unforeseeable.  It further urges dismissal because it was not given notice of the dangerous condition (the hole in the field) or Waldsachs's decision to walk off the Parkway's shoulder. Since the Jones Act requires notice of unsafe conditions, Inland Marine concludes its ignorance of the hole entitles it to summary judgment.

Inland Marine's first objection confuses the general concepts of agency.  Since C/C and Bobo were acting as agents for Inland Marine during the transport of Waldsachs, their behavior may be imputed to Inland Marine.  *See Rannals*, 265 F.3d at 450 ("[A] third party's negligence in providing a safe workplace for an employer's workers may be imputed to the employer where that third party has a contractual relationship with the employer and the employee is acting in the course of her employment . . . ." (citing *Hopson*, 383 U.S. at 264)).  FELA does not require a showing that the employer was negligent, only that the agent performing the operational activity acted inappropriately.  *See Robinson*, 535 F. Supp. 2d at 879-80.  Ergo, Inland Marine's actions and duties are inapplicable to the instant analysis.

Insofar as Inland Marine argues Bobo's behavior was not a breach of the standard of care, Waldsachs has provided sufficient evidence to avoid this motion for summary judgment. "[I]n suits under the Jones Act, the court must determine whether the evidence justifies the

8

conclusion that the employer was negligent and that the employer's negligence played any part, however slight, in producing the injury to the seaman." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir. 2001) (explaining that there is a "reduced standard for causation between the employer's negligence and the employee's injury" under the Jones Act). "In order to establish negligence, 'a plaintiff must show that her employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known and that such failure caused the plaintiff's injuries and damages.'" *Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 383 (6th Cir. 2008) (quoting *Rannals*, 265 F.3d at 449). When considering a motion for summary judgment on a Jones Act claim, a court should be "mindful of the 'policy of providing an expansive remedy for seamen' who are injured while acting in the course of their employment and recognize that the 'submission of Jones Act claims to a jury requires a very low evidentiary threshold.'" *Rannals*, 265 F.3d at 447 (citation omitted).

In the Court's earlier Memorandum and Opinion Order, it summarized the following problems with Bobo's actions on the Parkway:

> [C/C] should have recognized that Bobo's actions involved a risk of harm to Plaintiff. Bobo pulled off to the side of the road (or side of a ramp) on a four-lane highway instead of pulling into a rest stop or a gas station. He knew that Plaintiff had to exit the vehicle to urinate. It was daylight and there was nothing blocking the view of other vehicles. It is common knowledge that human beings seek privacy while using the bathroom. Further, it is illegal in Kentucky for a person to "intentionally expose his genitals under circumstances in which he knows or should know that his conduct is likely to cause affront or alarm to a person . . . ." Ky. Rev. Stat. Ann. §§ 510.148, 150. In light of this required knowledge, Bobo should have recognized that pulling off where he did for Plaintiff to urinate posed a foreseeable risk that Plaintiff would seek a private place to urinate and could suffer injury.

Mem. & Op. Ord., p. 6-7, DN 36 at 6-7. There is sufficient evidence for a reasonable jury to

determine C/C and Bobo did not provide a safe workplace or consider the obvious dangers of stopping on the side of major interstate for passengers to urinate.  Furthermore, Inland Marine's statements about "notice" are unavailing since its agent knew or should have known of these dangers.  This clear departure from the duties of a common carrier, coupled with the low evidentiary threshold required by Jones Act claims to reach the jury, compels this Court to deny summary judgment for Inland Marine.[6]

## CONCLUSION

Notwithstanding this opinion's findings, the Court stands by its earlier conclusion that there is a strong probability of the jury applying comparative fault.  It again urges the parties to explore the possibility of settlement.

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant  Inland Marine Service Inc. Motion for Summary Judgment (DN 31) is DENIED.

---

[6] While Inland Marine does not expressly attack the element of causation, the Court concludes its earlier opinion properly addressed this issue.  Therefore, that portion of the opinion and its reasoning are incorporated into the instant opinion.